Thank you. May it please the court, Mr. Wright. This case is essentially about two neighbors who became neighbors prior to 1986. They were probably as close in proximity as two neighbors could be. And at the time of my clients having purchased his property from the plaintiffs, they entered into an agreement governing essentially their relationship, which was principally for the purpose of cross-easements, because they're parking lots about it. The purpose of the easement is spelled out in a rather lengthy provision, but in Section 202B, it's boiled down to create a common area to be used for no purpose other than ingress and parking. It's basically a cross-easement agreement. Now, to enforce this, there were specific and limited restrictive covenants, if you will. And as we cited in our brief, and I don't think it's ever been contested, restrictive covenants have their own standard of proof in that if there is any ambiguity because of the presumption in favor of the free alienation and use of property, if there's any ambiguity, it's resolved in favor of the free use of property. Now, the covenants in question, well, there are three such covenants. One talks about obstruction as far as moving back and forth between the two parking lots, if you will, the two adjoining properties. The second one talks in terms of the building of structures, but that appears in a rather ill-defined language as far as what property relates to. And then the broadest of the restrictive covenants is that the common area be used, or should they not be used, for the display or sale of merchandise. It's there for customer use, parking, and that sort of thing. Now, there are exceptions to these covenants, and we'll hear about one of them. It is, I believe, clear and unambiguous in that notwithstanding those other provisions, particularly the sale of merchandise, my client was granted a provision that says it is further understood and agreed that buyer, my client, may on parcel B, parcel B is described on the agreement as his entire parking lot, sell Christmas trees from November 15th through December 31st. And sell flowers, plants, and trees in the spring from April 1st through June 30th. I don't think there's any dispute as to what parcel B is, that it covers his entire tract, or that the language was intended to cover the entire tract because the immediately preceding exception, which ran in favor of the plaintiff, allowed him to display sheds, but only in the southeast corner of his parcel A. So the intent was to make it unrestricted as to paragraph B. Now, as to the sale of Christmas trees and flowers, plants, and trees, there is probably nothing better known in parking lot merchandising than Christmas tree lots and the springtime appearance. Usually taking the best parking spaces in almost every grocery store, big box retailer, Walmart, hardware stores of the temporary area, cordoned off sections of the parking and the driving lanes with a little tent to protect the flowers that are susceptible to the sun, and of course a cash register for the exchange. Now, this is what my client attempted to do in April of 2013, pursuant to that express grant to him. In April, he sought to create one of these outdoor, it's been called a garden center, but it's an area for selling plants and trees. It would be cordoned off from traffic by those packing pallets and some multicolored railing. And he was about to put up a little protected area for the flowers and set up a cash register when this action was filed by the plaintiff in joining that. On the basis that, although there's no question he was expressly granted that right, it was the plaintiff's position that other provisions in the agreement, which weren't accepted out, precluded him from any practical use of the property. In essence, their position was, you can't take up a single parking space, you can't block a single lane, you can't put up this temporary railing cordoned off. So, while yes, you can sell flowers, plants, and trees, you have no place to sell them. Because, as I think the court, oh yes, the court can take... Counsel, you agree that this court needs to attempt to give meaning to all provisions of the contract, correct? Yes, Your Honor. Well, at the preliminary injunction stage, the trial court tried to render all provisions as meaningful and enforceable and came up with a solution that the trees and the plants and flowers could be sold, I guess, in front of the store in the sidewalk area. Is that unreasonable? Does that give, as the trial court apparently thought, meaning to all provisions of the contract without making any of them null? No, Your Honor. In fact, that would expressly nullify the provision we're talking about. How so? Well, the area that was suggested to the trial court, and interestingly enough, was incorporated in both the orders submitted to the trial court and prepared by the plaintiffs, came from language that already appeared in the agreement. That is, there was already a right to have sidewalk sales essentially all year round and to have tent sales for certain periods of time. The express provision, and by the way, those were geographically defined as to where they could do them. One was on the sidewalk and one was just in the area between the building and the first row of the lights for the parking lot. This provision spanned the entire parking lot, parcel B, which is defined in, I think it's appended at A8 to the appendix, the entire parking lot because in recognition of the fact that in order to effectively do this, you need far more room than you can do on the sidewalk of your building or even in that front area because one, you block the road, and two, in order to have any kind of volume, you would have to essentially obliterate the front of your store as far as any visibility to the customers. So in the sense of resolving that, the suggestion by the trial court does just what he was trying to avoid. It eliminates the specific provision we're talking about because its purpose was for these two particular types of sales, for their specific period of time, it would be to allow my client, the use of his parking lot, to conduct these in a volume that would allow him to turn a profit, if you will. Essentially, you could either pack, and I don't know that you could pack significant enough merchandise to even make it worthwhile doing, without losing more customers who can't get through the door under the suggestion of that provision, or you literally have people walking around like popcorn vendors at a ballgame selling these things. I mean, it's an effective impossibility. And I think the court, and probably anybody who certainly lives in central Illinois, know that these things are put up and they're large to show a broad spectrum of merchandise from flowers to plants to trees to hanging baskets and all of those things. So essentially the interpretation is that that provision is meaningless. That no, you just go by these other provisions and that was put in there and you don't have any need to do that. In fact, if you look at the two orders, the plaintiffs have never been able to come up with any meaning to that provision consistent with their position. If you look at the orders, they talk in terms of, well, you can do these other things because of those provisions, so you don't need this. But essentially, they can't come up with anything that would justify limiting it to what already existed. And again, as I've indicated, these are restrictive covenants. So the language used to eliminate them has to be free of any ambiguity. Now the interesting thing about this grant is it appears in 2.02a and in 2.02b it expressly says that subject to the four growing rights, buyer and seller shall prohibit the common area from being used for any purpose other than for ingress, parking, and the like. Now essentially, every restrictive covenant specified is a subset of that purpose. So the document itself specifically exempts the provisions that are outlined in 2.02b and there are several in there for the benefit of the plaintiff as well. So in looking at this thing, I wanted to direct the court's attention to a particular section, 1.09. Now this was relied heavily before the trial court and I believe by the Applees brief as well as an independent restriction against the use of my client's property, an independent covenant if you will. 1.09 is interesting for a couple of reasons. First, it's not a restrictive covenant. In fact, it's an exception to the restrictive covenants. What it says first is that the parties can improve their buildings if you will, the non-common area portions of their property. It limits that ability by saying but you can't make these improvements if they're going to interfere with sight lines or reduce the parking spaces. Then it imposes an exception to that restriction where it says but if, and this is solely for the benefit of the plaintiff, So if you decide to expand your building or build an adjacent building to your existing building, then the rule about you can't eliminate a parking space is inapplicable. But all of it falls in the context of the specific purpose of whether or not the plaintiff is going to expand its existing operation if you will, either adding to its building or building an adjacent building to that. It doesn't reference any other provision of the agreement. So it is not, as was suggested to the trial court, it is not an independent restriction that you can't eliminate a parking space and that you can't somehow interfere with the sight line. That is unique to the improvement of the plaintiff's building, or my client's building for that matter, if he would do that sort of expansion. So the only exception is that that 109 grants that right to expand or build another building adjacent to the original ACE hardware. There's nothing else. There's no other reference. It doesn't say you can sell whatever you want to in there. There's no exception in it whatsoever. So essentially, and this is where we come on this, essentially, if we use the argument urged by the plaintiffs in this case that the trial judge accepted, that the grant of a right can be restricted or eliminated by other provisions that don't have an exception, you have a situation where if we apply that to what happened is because the plaintiffs did, in fact, build a building. The court may be familiar with the garden center that appears next to it. It's a fairly substantial undertaking. It's made of brick and permanent fences, and it has the same covering for the perishable plants that my client attempted to do. They built that under the provision maintaining that was a building and so that they were authorized to do that. However, there was nothing in the contract that exempted the other provisions of the contract. We follow the plaintiff's logic here. Okay, you can build a building, but you can't display any merchandise in it, and you can't sell any merchandise in it. Now, the plaintiff, of course, because frankly, one of the things this invokes, one of the rules of construction is an absurd result, the giving with one hand and taking away with the other. The logic is that you can build the building, but you can't use it. I mean, that makes no sense, and I think certainly crosses the line into absurdity. So if they're granted a right to build a building, they're granted the right to use the building and a right that supersedes any other restriction. That's exactly what we have here. He's granted a specific seasonal right to use his parking lot to put up temporary sales of Christmas trees, temporary sales of flowers in the winter and in the spring. Now, the plaintiffs have used this. They've built this building, and they have used it because it's consistent with both logic and the meaning of intent of disagreement. In both instances, the parties intended to create a right that was a viable, useful right, not to grant a right that the rest of the agreement divests them of or renders it useless. And the plaintiffs took advantage of that. They put up a garden center, asserting they have a right to build a building, and under the rationale that, well, if we have a right to build a building, it is logical and implicit. Otherwise, it makes no sense that we have a right to sell things in it, which it is for many years. That was their position. That was their interpretation of this agreement, that the granting of a right exempted or superseded any other things that would be inconsistent with the exercise of that right. And it was only until my client attempted to exercise his right, which coincidentally was in competition with the use being made of their garden center, that they changed their position and asserted the absolute contrary position to their use of their garden center. And in keeping with that, and I see my lights on, in the context of the standard for restrictive covenants, again, I would just direct the court's attention to the two provisions they rely on. One doesn't restrict it. It is limited to traffic between the two properties, which my client's proposed garden area was on the absolute opposite side of the border between the two tracks. The second one is, I think we're being kind to call it ambiguous, because it's clearly the intent that it not cover the entire parking lot, but is so absolutely ill-defined that you can't tell where it is. You can't tell if it's in front of the building, but along the street, is it just the parking lot, is it just the driveway? And again, applying the applicable rule of restrictive covenants, that ambiguity alone would render that unenforceable. Thank you. Thank you. Additional time on rebuttal. Mr. Wright. Thank you. And please, the court. Mr. Randall. My name is Dan Wright. I represent the plaintiff, appellee, Bishop Hardware, Inc. This is a fairly straightforward issue, I think, at its core. Justice Turner got, I think, to the heart of it, which is the court's required to interpret a contract in the context, each provision in the context of the entire agreement, give effect to each one to the extent possible within reason. And I think that's exactly what the trial court did here. Courts aren't permitted to redraft an agreement to give parties a better bargain than they established between themselves. And that's what, after 30 years of performing under this agreement, that's what the appellants are asking this court to do in reversing the trial court. That would be the effect of a reversal that, because the party, because the appellants decided that the grant afforded to them in the agreement wasn't expansive enough after 30 years, they decided to test it and our clients and invoke their rights under the agreement. And to specifically address the provisions that counsel addressed, there's the general grant, which is in section 202A, which we see that the parties expressly talk about what kind of structures or what kind of obstructions you are expressly permitted to construct on the common area. Specifically, tents, references for small sheds, tents during certain times of the year. So the parties were perfectly capable of articulating the types of structures or obstructions and the time periods for those things on the common area. And if it was a practical impossibility to exercise the right that is cited by the appellants, then they should have provided for those things in the agreement when they're perfectly capable of adding those provisions to the agreement at that time. Because they did so in other instances. And again, the court's well aware of the well-settled principle that there's a presumption that if parties intended for things to be a part of an agreement, they would have put those provisions into the agreement, which stands for the basic proposition that courts shouldn't imply new terms or an expansion of rights into an agreement. And I think that was the main principle observed by the trial court in an attempt to, as Justice Turner said, to balance all the provisions in the agreement. I don't believe that an injunction is required to encompass the entire universe of things that you can do under an agreement, but addresses a specific issue and joins specific context saying what you can't do under the agreement. So in this situation, the trial court said you can't build the structure that you proposed, which is this expansive garden center taking up 25 parking spaces and blocking the view, etc. In direct contradiction to specifically the provisions that counsel has already gone over, but most specifically no signs in Section 1.03, no signs, fences, hedges, curbings, barriers, walls, structures, or other obstructions. Section 301, no buildings or structures of any kind on the parking area and the main entrance. Those are pretty categorical. Now the question I think that is begged by those provisions, those limitations, is what can they do under this provision that allows them during specific times of the year to sell flowers, plants, and trees on Parcel B? Well, I think the answer to that is that they can erect tents, which is specifically provided for under the agreement, not under the specific language. And they can sell flowers, plants, and trees in any manner they see fit that doesn't violate these other provisions. Now one might say, well, these other provisions greatly diminish their ability to do that. Well, that's what the party's bargain was. And if they wanted to have specific rights to erect a neon pallet fence to enclose their merchandise, if they wanted to cordon it off, the parties were sophisticated enough to provide for similar provisions for other types of displays of merchandise. They didn't do so as a presumption against applying those terms into the contract. Again, a decision affirming the trial court. You said they could have erected tents during this time period? They could have done so for the entire time period? No, Judge. Justice Turner, on page 8 of our brief, it refers to Section 202A, which is the provision that includes, generally prohibits the sale or display of merchandise in the common area, but articulates specific exceptions to that. One of those is that the erection of tents and conduct of sales of goods and merchandise are no more than four times per year for ten days at a time. So that's separate from the general grant, which is really, there's a temporal limitation on that. The grant that the appellant relies upon is just the sale of flowers, plants, and trees anywhere in Partial B during the period of November 15th through December 31st for Christmas trees and April 1st through June 30th of each year in said area. So I suppose that those rights could be exercised at the same time within the constraints, both temporal and geographic, of the other provisions of the agreement, too. So to be more specific, they could erect tents under this agreement as long as it wasn't for more than ten days at a time. And let's say that period happened to be between one of the November 15th through December 31st or April 1st through June 30th. I think those provisions, the rights under those could be exercised at the same time, consistent with the express language of the agreement. So I don't think it was the plaintiff's burden at the trial court to articulate the universe of how they could permissibly exercise their rights under this agreement. The specific issue before the trial court was the structure that they proposed on these particular facts. No disputed facts. And the trial court found that that particular structure violated the express limitations in the agreement. What structure would not violate the agreement? Judge, I don't think I can answer that question because certainly a tent wouldn't violate the agreement because it would be in accordance with the express provision that you can erect tents. I don't believe that there's any structure, and again, defining a structure, but any structure which would include what was erected here that would comply with the bar against any structures, obstructions, fences, et cetera, that wasn't specifically provided for like a tent. Because that's expressly provided for to the exclusion of the general limitations. Well, that kind of brings it back to my original question, Mr. Randall. Under that interpretation, aren't we essentially nullifying the plant flower's ability to sell that type of merchandise between April 1 and June 30? I don't believe the court would be nullifying anything by affirming the trial court's decision. And I don't think it's incumbent upon the plaintiff to show them exactly how they could exercise their rights under the agreement. The trial court said you certainly have the right to sell flowers, plants, and trees in accordance with the agreement. And it didn't say here's exactly how you can do it. To some extent, that would be, I think, an impermissible advisory opinion. But the parties never discussed the manner in which they could compromise to comply with the agreement. But clearly, they intended for there to be an ability to sell flowers, plants, and trees. And I think the disagreement here is not whether they can do that. It's the manner in which they can do that. I don't think anyone would, this is an extreme example, but I don't think anyone would disagree that you could have flowers, plants, and trees in an area in the parking lot that wasn't on a parking space. That you didn't have a structure surrounding it. It didn't obstruct the view of the building or vehicular traffic. That might not be an ideal commercial situation where you'd like to have an expansive structure. But that's not what the parties bargained for. And counsel cited the trial court and alluded to it today that the court should take judicial notice of the prevalence of flower sales, garden centers on parking lots throughout central Illinois. There are a lot of them out there. I don't think that's appropriate for the court to take judicial notice of. There's nothing in the record that would support that. However, there's also nothing in the record that suggests that all those other places have the same agreement that imposes the same restrictions on the parties. So perhaps those other places, the parties that enjoy use of those properties, didn't agree to the terms that are contained within this agreement. I think the trial court's interpretation was fair and reasonable under the circumstances. And although the interpretation of the agreement does substantially limit that express right, it doesn't totally eliminate it. And that's, under the circumstances, the balance that the trial court reached. And I think it was fair and reasonable under the circumstances. Thank you. Well, on the question of does it eliminate it, it renders it literally impossible and meaningless. The pointing out of how these kinds of sales are conducted is not on whether or not they have a right to do it or a lease to do it or what their legal basis for doing it. The methodology of doing it is the same. You can't, these are high volume items. You can't take them in at night. They're in dirt. They're huge, you know, large pots, flats, flowers. They have to be left in a place and in a location during their entire period that they're for sale. Without the ability to do that, Mr. Wright suggests, well, they can do it as long as they don't take up one parking space or any of the driveway. Well, that renders it impossible to perform. So there would be no reason to even put that in there or address it. It was limited to just the right that already existed. And Mr. Wright has never, plaintiffs have never answered the simple question. His answer is, well, we don't have to explain how they could do it. There must be some way they could do it. No, there really isn't any way in any kind of practical sense that that agreement wasn't meant to do exactly what the defendants attempted to do. In fact, exactly what the plaintiffs are doing and the plaintiffs did in conducting their sales. The same argument would apply to them. Well, they only negotiated the right to build a building. They didn't negotiate the right to sell anything in it. There are certain things that are implicit in a term. Now, obviously, and that's why I point to the fact that we've observed countless of these, implicit in outdoor sales of flowers are everything the plaintiff intended to do. His structure was as limited as it could possibly be, two rails. But nobody can shop for anything in a parking lot if there are cars driving by because it's dangerous. Nobody's going to do that. There has to be an area of safety so that they can actually look at the merchandise. The plaintiffs knew this was the intent of the agreement. That is, these rights were to supersede all of the other restrictions. Otherwise, it isn't a right at all. Interestingly, in 202B, which does not appear in 109, is the provision that subject to these express provisions, the purpose of this agreement shall be fulfilled, which, of course, is all the restrictions. They made it expressly subject to them, every restrictive covenant in it. That was clearly the intent of the agreement, and I think the plaintiffs recognized that in the building of their own garden center. I think the only difference in or change in the plaintiff's position is the defendant's garden center would compete with theirs. That's not a basis for changing the contract itself, nor for the interpretation that everybody agreed on all these years that authorized the plaintiff to operate its own garden center. I think under the standard applicable to restrictive covenants, the agreement is insufficient to impose provisions. Counsel, what if the agreement had said that either party may sell flowers, plants, and trees from April 1 through June 30? If both parties did that, could all the parking spaces be eliminated effectively? Well, if they had agreed to that, Your Honor, they agreed to that. So the answer to my question would be yes. If that had been in there the way at least you're interpreting it, the entire parking lot could be shut down. Yes, and I think, Your Honor, that is why it was drafted unilaterally. If you look at this agreement, you can see the tradeoff. Yes, only the plaintiff can put up his garden center. The plaintiff, on the other hand, unlike the defendant, can erect a building on his section of the common area. So to avoid what the court is talking about, they did it the way they did it. Okay, you do yours in your parking lot. You can build a building, erect a building on your own property and do whatever you choose to do on it. In fact, in looking at it, the defendant got the worst of the deal because his was very limited and defined. The plaintiff, on the other hand, could have erected a building and sold anything they wanted to on it in the common area. So I think, to address that question, I think it offsets. It was staggered for the very reason and the very concern the court expressed. Thank you, counsel. We'll take this hearing under advisement and stand at recess until further call.